Anthony D. RIBAUDO, Plaintiff–
Appellant,

v.

Thomas E. BAUER, Susan Frederick,
Committee to Elect Tom Bauer, John/
Jane Doe, and Doe, Inc., Defendants–
Respondents.

No. 73801.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 24, 1998.

Mariano V. Favazza, St. Louis, for appellant.

Scott C. Harper, Clayton, for respondent.

ROBERT E. CRIST, Senior Judge.

Plaintiff Anthony D. Ribaudo appeals from the trial court's grant of a summary judgment on his defamation action in which he alleged he was libeled by political campaign literature promulgated by his opponent Thomas Bauer and the other defendants involved in the Committee to Elect Tom Bauer.

In the August 2, 1994 primary, Ribaudo was running as the incumbent seeking the Democratic party nomination for state representative in the 65th district in the City of St. Louis. Defendant Bauer was also a candidate for the Democratic party nomination. During the course of the campaign, Bauer took out an advertisement in the *Southwest City Journal* on July 31, 1994, which questioned Ribaudo's motives in running for mayor in the 1993 mayoral campaign for the City of St. Louis. In his petition for defamation, Ribaudo complains about the following language in the advertisement:

> The riverboat scandal article about Tony Ribaudo and the two pictures from the mayoral campaign arguably tell us why Tony decided to split the vote and make Freeman Bosley mayor.
>
> First Tony got his associate's boat included in the gambling area. Next he needed a mayor who was so obligated to him that he would negotiate a lease that would cheat the people and make his friend a multimillionaire. Tom Villa was too honest to be a part of a corrupt deal. His defeat was part of this get rich scheme.
>
> The devious vote split scandal was exposed on election night when Tony was photo-

graphed celebrating with his friend, Freeman Bosley. Bosley's victory was Tony's victory.

On St. Patrick's Day in Dog Town, two weeks after the election, the crowd booed Tony. They finally understood he stayed in the mayor's race to split the vote.

Ribaudo further complained about campaign literature distributed throughout the 65th district between June 1, 1994 and August 2, 1994, wherein Bauer targeted Ribaudo's political career and also questioned Ribaudo's motives in the mayoral campaign. Ribaudo specifically objects to the following language:

He sold out his own people on the Hill; he sold out Dog Town; it was all about money and power. Now's the time to vote the rascal out.

Finally, Ribaudo objected to a television commercial which stated the following:

[h]e [Ribaudo] redrawed the lines to include his associate's boat in riverboat gambling. He spent one half million dollars to split the vote to make his friend Freeman Bosley mayor. Tony needed someone he could do business with. Now his associate is rich. It's clear Tony is in office to help himself. Now's the time to vote the rascal out.

Ribaudo filed his defamation action on May 24, 1996. On May 29, 1997, Bauer filed a Motion for Summary Judgment. In his motion, Bauer admitted the advertisements in question were all made in the course of campaigning against Ribaudo in 1994. Bauer asserted in his motion and accompanying affidavit: (1) the statements were expressions of opinion based upon articles published in several area newspapers; (2) Bauer made the statements believing the newspaper articles were true; (3) Bauer believed his statements were true and accurate; (4) Bauer did not accuse Ribaudo of committing a crime; and (5) no showing of actual malice had been made. Bauer attached to his motion copies of several newspaper articles about Ribaudo. Ribaudo filed a response, repudiating Bauer's contentions. After a hearing on the motion, the trial court granted Bauer's motion for summary judgment and dismissed Ribaudo's petition with prejudice. The court found the statements were not defamatory and constituted statements of opinion by Bauer.

We have a duty *sua sponte* to determine whether we have jurisdiction to entertain this appeal. Initially, the summary judgment entered by the court appears to apply only to one defendant in the case, Bauer. However, within the judgment entered by the court, the court also dismissed Ribaudo's entire petition with prejudice. This action dismisses the petition against all the remaining defendants. Furthermore, the resolution of the libel issue for defendant Bauer necessarily resolves the same claims against the other defendants. *See, Podlesak v. Wesley,* 849 S.W.2d 728, 730 (Mo.App. S.D.1993). Therefore, the judgment entered by the court disposed of all counts against all parties.

 The standard of appellate review on appeal of a summary judgment is essentially *de novo.* The propriety of summary judgment is a matter of law and the appellate court need not defer to the trial court's decision. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). However, we review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Summary judgment is permissible where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3); *Rice v. Hodapp,* 919 S.W.2d 240, 243 (Mo. banc 1996).

We consider both of Ribaudo's points together. In Point I, Ribaudo contends the trial court applied the wrong standard for determining whether an alleged libelous statement is capable of defamatory meaning and also erred in concluding the statements did not accuse Ribaudo of the commission of a crime. In Point II, Ribaudo argues the trial court erred in concluding that only an accusation of a commission of a crime can constitute actionable libel and in overlooking evidence that Bauer's statements were capable of harming Ribaudo's reputation and lowering him in the estimation of the community

and subjecting him to the public's hatred and contempt. Both of these issues turn on whether the trial court correctly found the allegedly defamatory statements were opinion.

To prevail on a claim for defamation, a plaintiff must prove the following elements: (1) defendant published the alleged libelous statement; (2) the statement was false; (3) defendant published the statement with "actual malice," knowledge of its falsity or with reckless disregard for its truth or falsity at a time when the defendant had serious doubts about its veracity; (4) the statement was defamatory; (5) others read the statement; and (6) plaintiff was thereby damaged. *See,* MAI Sec. 23.06(2); *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 312 (Mo. banc 1993).

When courts review allegedly libelous statements to determine if a plaintiff can survive summary judgment, there are two primary components. First, the court must determine whether the statement is capable of having a defamatory meaning. *See, Pape v. Reither,* 918 S.W.2d 376, 379 (Mo.App. E.D.1996). Whether language is defamatory and actionable is a question of law. *Ampleman v. Scheweppe,* 972 S.W.2d 329, 332 (Mo. App. E.D.1998). Therefore, courts are empowered to determine whether an allegedly libelous statement is capable of a defamatory meaning. *Id.* If the statement is capable of a defamatory meaning, then a plaintiff can survive summary judgment on that issue and the jury must determine if the statement did, indeed, have a defamatory meaning. *Pape,* 918 S.W.2d at 379.

In evaluating whether the statements are capable of a defamatory meaning, the court considers the alleged defamatory words "in context, giving them their plain and ordinarily understood meaning." *Nazeri,* 860 S.W.2d at 311. Further, the words should be taken in their most obvious and natural sense, according to the idea they are calculated to convey to whom they are addressed. *Id.* These two standards should be read together in determining if the statements in question are capable of a defamatory meaning. *Id.*

Second, even if the statements are capable of a defamatory meaning, the court must also inquire if one or more privileges would shelter the defendant from legal action. These privileges have primarily arisen from various protections offered by the First Amendment to the United States Constitution. They include the absolute privilege accorded statements of opinion, which even if made maliciously or insincerely, do not give rise to a libel cause of action. *Pape,* 918 S.W.2d at 380. Missouri recognizes one exception to this general rule. The privilege does not apply when the statement of opinion implies the existence of undisclosed defamatory facts. *Id.*

Ribaudo contends the court erred in considering the issue of opinion in determining if the statements were capable of defamatory meaning. The trial court limited its judgment to determining if the statements were defamatory as a matter of law. It stated it was not considering the applicability of any absolute or qualified privileges. However, in its assessment of the defamatory character of the statements, the court found the statements were opinion and not actionable.

We find no error in the trial court's determination of whether the statements were opinion. First, both parties addressed the issue of opinion in their respective summary judgment pleadings to the court. Further, the question of whether or not Bauer's statements are opinion goes directly to the determination of whether the statements are actionable, which the court expressly stated it was determining. *See, Klein v. Victor,* 903 F.Supp. 1327, 1332 (E.D.Mo.1995). Moreover, the question of whether a statement has a defamatory meaning does not arise unless the statement is an assertion or implication of fact. Therefore, out of necessity, the court must first determine whether a fact finder could reasonably conclude the statements implied assertions of fact before it can determine if a statement has a defamatory meaning. Therefore, we find no error in the trial court considering whether the statements were opinion in its assessment of whether Bauer's statements were actionable.

The question remains whether the statements in issue were simply opinions, entitled to Constitutional protection. We conclude they are merely statements of opinion. They do not accuse Ribaudo of committing a crime. Therefore, they do not give rise to a cause of action for libel.

The determination of whether a statement is a pure opinion or an assertion of fact is a question of law. *Nazeri,* 860 S.W.2d at 314. The test applied to determine if a statement is opinion is "whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id.; See, Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19, 110 S.Ct. 2695, 2705–2706, 111 L.Ed.2d 1 (1990). The court must examine the totality of the circumstances to determine whether the ordinary reader would have treated the statement as opinion. *Henry v. Halliburton,* 690 S.W.2d 775, 788 (Mo. banc 1985); *Diez v. Pearson,* 834 S.W.2d 250, 252 (Mo.App. E.D.1992). A charge of criminal conduct is generally not a statement of opinion, but rather an assertion of fact. *Diez,* 834 S.W.2d at 252. "A statement that refers to criminal conduct must be examined in context in order to determine whether the reader would be left with the impression that the plaintiff was being accused of a crime or that the defendant disagreed with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval." *Id.*

Considering these words in light of all the relevant circumstances, we believe the average reader would have believed the statements were opinion.[1] The general tenor of all the advertisements as a whole is not objective. Bauer used language in one flyer that the newspaper articles outlined "the tawdry history of Tony Ribaudo's political career." He used qualifying language on several occasions, such as "reportedly" and "arguably." He calls the vote split scandal "devious" and refers to Ribaudo as a "rascal." The statements are clearly statements of opinion on Ribaudo's political career. His other statements are simply inferences which could not realistically be proven.

Further, based on the totality of the circumstances, it is also clear they do not charge Ribaudo with the commission of any specific crime. Ribaudo argues they charged him with violating a St. Louis City ordinance, 2.08.400, which requires a candidate for public office to file a written declaration that he received no remuneration, personal gift or personal favor for filing his candidacy. He also asserts the advertisements charge him with mail fraud in violation of 18 U.S.C. Sec. 1341 & 1346, by implying he was a bogus "stalking horse" candidate. Yet, upon reading the campaign advertisements, the average reader would not be left with the impression that Ribaudo was being accused of those crimes. " '[B]road, unfocused, wholly subjective comment[s]' that do not suggest to the ordinary reader that the plaintiff committed a crime are not actionable." *Henry,* 690 S.W.2d at 790, *quoting Lewis v. Time, Inc.,* 710 F.2d 549, 554 (9th Cir.1983).

Ribaudo argues the trial court overemphasized the fact the statements were made in the context of a political campaign. We disagree. The context in which the statements were made is extremely relevant and important. The statements cannot be considered in a vacuum, as suggested by Ribaudo. All of the statements were made during the course of a contentious political campaign between the parties. The Constitutional protection afforded statements made during public debate on political issues has always been broadly construed. *See, New York Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964); *Buckley v. Valeo,* 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46

---

1. In addition, we note that the allegations levied by Bauer in his campaign mirrored implications made by the *St. Louis Post–Dispatch* in an editorial dated October 4, 1993. In that editorial, the newspaper pointed out that a business associate of Ribaudo had received a lucrative riverfront lease for gambling from a bill signed by Mayor Freeman Bosley. In attacking the lease, the paper noted: "Mr. Ribaudo, St. Louisans will recall, ran for mayor in the Democratic primary last March. He and Aldermanic President Thomas Villa split most of the white vote. Would Mr. Bosley have won had Mr. Ribaudo dropped out? If the lease amendment was intended to show gratitude, that's still no excuse for not guaranteeing that the city got its fair share."

L.Ed.2d 659 (1976). In *New York Times,* 376 U.S. at 270, 84 S.Ct. 710, the United States Supreme Court pointed out the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."

Further, several cases throughout the United States exhibit the difficulty a political candidate has in recovering damages for allegedly defamatory statements. *See, Krueger v. Austad,* 545 N.W.2d 205 (S.D.1996); *Carr v. Brasher,* 776 S.W.2d 567 (Tex.1989); *Hein v. Lacy,* 228 Kan. 249, 616 P.2d 277 (Kan.1980); *Clark v. Allen,* 415 Pa. 484, 204 A.2d 42 (Penn.1964); *Beilenson v. Superior Court (Sybert),* 44 Cal.App.4th 944, 52 Cal. Rptr.2d 357 (Cal.App. 2 Dist.1996). In *Beilenson,* 52 Cal.Rptr.2d at 364–65, the California Court of Appeals noted the unfortunate tone many political campaigns have taken. Yet, it noted that such rancorous campaigns have existed as long as this country, allowing candidates to express the most noble and the most vile sentiments. *Id.* Even so, the preservation of such free expression is necessary to ensure the uninhibited, vigorous discussion of governmental affairs. *Id.* at 365; *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 1529, 71 L.Ed.2d 732 (1982). Further, even the *Nazeri* test indicates the statements should be considered "in context." *Nazeri,* 860 S.W.2d at 311. Therefore, the fact that the statements were made in the course of a political campaign is entitled to great weight in determining whether there is actionable libel.

We find that as a matter of law, Bauer's statements were not actionable as libel because they were simply statements of opinion about Ribaudo's political career. Therefore, Bauer was entitled to summary judgment as a matter of law. Therefore, we deny both of Ribaudo's points on appeal.

In his brief, Bauer contends Ribaudo failed to provide any evidence to show the campaign advertisements were made with actual malice. In its summary judgment, the court never specifically addressed whether Ribaudo offered summary judgment facts to support a finding of actual malice, although this issue was raised and briefed by both parties. By necessity, however, the issue goes directly to the truth or falsity of the statements, on which the court did not rule. However, based on this decision, we need not rule on this issue or other issues raised by the parties.

Judgment affirmed.

ROBERT G. DOWD, Jr., C.J., and KENT E. KAROHL, J., concur.