# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3206

_____

| | | |
|---|---|---|
| Ken Hammer, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| The City of Osage Beach, Missouri, | * | |
| and Jim Schneider, | * | |
| | * | |
| Defendants-Appellees. | * | |
| | * | |

_____

Submitted:   March 14, 2002

Filed:   January 31, 2003

_____

Before McMILLIAN, HEANEY and RILEY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Plaintiff Ken Hammer ("Hammer") appeals from an order entered in the United States District Court for the Western District of Missouri[1] granting summary judgment in favor of Defendants the City of Osage Beach ("the City") and the City's Mayor, Jim Schneider (collectively "Defendants"). See Hammer v. City of Osage

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Beach, No. 00-4050-CV-4-ECF (W.D. Mo. Sept. 7, 2001) (hereinafter "slip op."). For reversal, Hammer argues that the district court erred in granting summary judgment in favor of Defendants because there were genuine issues of material fact in dispute as to (1) whether Defendants violated his procedural due process rights; (2) whether he was wrongfully discharged; and (3) whether statements critical of his job performance contained in a press release were non-actionable opinions protected by the First Amendment. In addition, he argues that the district court erred in granting summary judgment in favor of Mayor Schneider because only the City filed a summary judgment motion. Hammer also argues that the district court abused its discretion in denying his second motion to amend his complaint. For the reasons set forth below, we affirm the judgment of the district court.

Jurisdiction in the district court was proper based on 28 U.S.C. §§ 1343 and 1367. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

FACTS

Hammer was the City Administrator for the City of Osage Beach, Missouri. As City Administrator, Hammer's responsibilities included preparation of the City's personnel code and pay plan. Hammer was also the City budget officer and under state statute and City ordinance was responsible for preparing the proposed budget for the mayor and the board of aldermen (the "Board"). Hammer did not have a written employment contract with the City. Under Osage Beach City Ordinance

-2-

2-123,[2] the City Administrator position was for an indefinite term and could be terminated by procedures set forth in Mo. Rev. Stat. § 79.240.[3]

On December 15, 1999, Mayor Schneider issued a press statement regarding the general status of the City's government (the "December 15 Press Statement"). The December 15 Press Statement referred to certain recent conduct by Hammer and two aldermen and contained accusations of general improprieties and illegalities related to the City's health insurance, contract bids, and Hammer's termination of

---

[2]At the time of Hammer's hiring and termination, Osage Beach Ordinance 2-123, provided:

> (a)    A qualified person shall be appointed city administrator by the mayor; such appointment shall be approved by a majority of the board of aldermen. The person so appointed shall serve for an indefinite term.
>
> (b)    The city administrator shall serve at the pleasure of the appointing authority. The mayor, with the consent of a majority of the board of aldermen, may remove the city administrator from office at will. If requested, the mayor and board of aldermen shall grant the city administrator a public hearing within thirty (30) days following notice of such removal.

[3]Mo. Rev. Stat. § 79.240 provides in relevant part:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.

another City employee. On January 10, 2000, at a closed meeting of the Board, Alderman Sheely moved to terminate Hammer's employment with the City. All six members of the Board voted on the motion to terminate Hammer, with three aldermen voting in favor of the termination and three opposed. Mayor Schneider broke the tie by casting his vote in favor of the termination motion. In a letter dated January 11, 2000, Mayor Schneider advised Hammer that his employment was terminated effective immediately. The letter did not state the reason for Hammer's termination.

On January 25, 2000, Hammer submitted a written request for a public hearing before the Board. Hammer requested advance notice of the date and time of the hearing in order to prepare for the hearing and to inform any witnesses he might choose to call. On January 27, 2000, Hammer received a letter from the City's attorney informing him that a public hearing would be held on February 7, 2000, and that only he would be permitted to address the Board and the public. Hammer spoke at the February 7, 2000, hearing and was given an unlimited amount of time to air his concerns. Hammer's attorney was also permitted to speak on his behalf. Nothing in the hearing record indicates that Hammer attempted to call witnesses.

On March 28, 2000, Hammer filed this suit in the United States District Court for the Western District of Missouri. On March 26, 2001, the district court granted Hammer's motion to amend his complaint. In his amended complaint, Hammer alleged that Defendants: (1) deprived him of a property interest without due process by failing to comply with Mo. Rev. Stat. § 79.240 when they terminated his employment, in violation of 42 U.S.C. § 1983; (2) wrongfully terminated his employment[4]; and (3) defamed him through false and libelous statements in the

---

[4]Although Hammer never raised the issue of supplemental jurisdiction, the district court nevertheless analyzed Hammer's state law claims, presumably pursuant to 28 U.S.C. § 1367.

December 15 Press Statement.[5]  On August 15, 2000, the district court denied Hammer's second motion for leave to amend his complaint to allege claims of retaliation for whistleblower activities.  On August 23, 2001, the district court allowed the City to amend its answer to add the affirmative defense of sovereign immunity.

On September 7, 2001, the district court granted the City's motion for summary judgment.  Slip op. at 14.  The district court held that Defendants had complied with the termination provisions contained in Mo. Rev. Stat. § 79.240, that Mayor Schneider was authorized to break the tie vote of the Board under Mo. Rev. Stat. § 79.120, and that Hammer's procedural due process rights were not violated.  Id. at 5-10. In addition, the district court held that Hammer's tort claim for wrongful discharge was barred by sovereign immunity and that any potential claim for breach of contract must fail because Hammer had no written employment contract with the City or, in the alternative, because he failed to adequately plead a claim for breach of contract.  Id. at 11-12.  The district court also held that Hammer failed to properly plead a claim of First Amendment retaliation.  Id. at 12.  Finally, the district court found that Hammer's defamation claim was also barred by sovereign immunity, and, in any event, the statements contained in the December 15 Press Statement were privileged opinions protected by the First Amendment and, therefore, not actionable. Id. at 13-14.  Although Mayor Schneider had not joined the City's motion for summary judgment, the district court held that the mayor's statements were privileged and, therefore, non-actionable, and dismissed the defamation claim as to all parties. Id.  (citing Ribaudo v. Bauer, 982 S.W.2d 701, 703 (Mo. Ct. App. 1998) (Ribaudo)

---

[5]Hammer's complaint also contained a count alleging that the City illegally tapped his office phone and illegally recorded his conversations, depriving him of his right to be free from unreasonable searches and seizures and his right to privacy, in violation of the Fourth Amendment. On August 23, 2001, the district court dismissed this count with prejudice by stipulation of the parties.

(dismissing libel claim against all parties where summary judgment was requested by only one party because the statement at issue was privileged)).  This appeal followed.

DISCUSSION

We review the district court's decision to grant summary judgment *de novo*. See Audio Odyssey, Ltd. v. United States, 255 F.3d 512, 516 (8th Cir. 2001) (citing Do v. Wal-Mart Stores, 162 F.3d 1010, 1012 (8th Cir. 1998) (additional citations omitted)).  The question before the district court, and before this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (Celotex); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the applicable law.  See Celotex, 477 U.S. at 248.  Having reviewed the record as a whole, considering all facts and reasonable inferences that can be drawn from them in the light most favorable to Hammer as the non-moving party, we conclude that the district court correctly granted summary judgment in favor of Defendants.

I.

Hammer first contends that there were genuine issues of material fact in dispute as to whether Defendants failed to follow proper termination procedures in violation of City ordinance, state law, and his constitutional right to procedural due process. Under Mo. Rev. Stat. § 79.240, which governs fourth class cities, including the City of Osage Beach, an appointed city officer may be removed at will by the mayor with a majority vote of all members of the board of aldermen.  The board of aldermen may also remove an appointed city officer independent of the mayor's approval or recommendation by a two-thirds majority vote.  Hammer claims that a two-thirds

majority vote of the Board was required to effect his termination because Alderman Sheely, not Mayor Schneider, made the original motion calling for his termination. Because the Board's original vote was tied three to three, Hammer claims that the vote was merely an "attempted termination" which failed to effectively terminate his employment. Hammer also argues that Mayor Schneider should not have been allowed to vote on the motion to terminate his employment because his personal enmity towards Hammer made him an interested party.

The district court held that it was irrelevant whether Mayor Schneider or an alderman first presented the motion to terminate Hammer's employment to the Board, citing State ex rel. Gorris v. Mussman, 612 S.W.2d 357 (Mo. Ct. App. 1980) (Gorris)).[6] In order for Hammer's termination to be effective under Mo. Rev. Stat. § 79.240, Mayor Schneider's recommendation and approval by a simple majority of the Board was all that was required. After the Board's vote on the motion to terminate ended in a tie, Mayor Schneider properly cast the tie-breaking vote. In exercising this power, Mayor Schneider expressed his intent to dismiss Hammer by personally voting for his dismissal – a decision supported by a majority of the Board.

---

[6]Hammer argues that his case may be distinguished from the case relied on by the district court, State ex rel. Gorris v. Mussman, 612 S.W.2d 357 (Mo. Ct. App. 1980) (Gorris). Hammer maintains that the vote on the original termination motion was tied, and it could not be assumed that Mayor Schneider would automatically obtain approval for his own motion to terminate. Additionally, Hammer argues that the official record does not show Mayor Schneider's approval of the Board's motion or his official decision to exercise the removal power, so it is unclear whether the mayor was simply approving the Board's action or exercising his own removal power. Therefore, Hammer argues that there were genuine issues of material fact in dispute as to who exercised the termination power under the statute and whether the termination was effective. Under Gorris, however, "[w]hich of the two procedures under § 79.240 is to be followed does not depend on who 'initiated' the action to remove the official but on who actually exercises the removal power." Id. at 361. By voting in favor of the motion to terminate, Mayor Schneider expressed his intent to dismiss Hammer and was not required to once again obtain the consent of the Board in order to effect the removal. Id.

As in Gorris, "the actions of the board and the mayor, following one upon the other, coalesced; together, these actions constituted a proper dismissal under the requirements of § 79.240." Id. at 362. Therefore, we hold the district court correctly ruled that Hammer's termination did not violate Mo. Rev. Stat. § 79.240 as a matter of law.

We similarly reject Hammer's argument that there was a genuine issue of material fact as to whether Mayor Schneider should have been disqualified from casting the tie-breaking vote because he was an interested party. Under Mo. Rev. Stat. § 79.120, the mayor has the authority to vote in matters before the board of aldermen in case of a tie, but may not vote in cases where he or she is an interested party.[7] The mayor is considered interested if he or she has either a pecuniary interest in the proceedings, or a personal interest resulting from "deep personal enmity." State ex rel. Ciaramitaro v. Charlack, 679 S.W.2d 405, 408 (Mo. Ct. App. 1984) (Ciaramitaro).[8] Although the record shows that Hammer had policy disagreements with Mayor Schneider, we agree with the district court's conclusion that Hammer failed to present evidence showing a genuine issue of material fact as to whether these disagreements rose to "the level of deep-rooted, mutual hatred, as is required to be an interested party under Ciaramitaro."[9] Slip op. at 7. These political disagreements,

_____

[7]Mo. Rev. Stat. § 79.120 provides in relevant part: "[t]he mayor shall have a seat in and preside over the board of aldermen, but shall not vote on any question except in the case of a tie, nor shall he preside or vote in cases where he is an interested party."

[8]Hammer conceded that he had not discovered evidence of Mayor Schneider's financial interest in the proceedings. Hammer v. City of Osage Beach, No. 00-4050-CV-4-ECF at 6 (W.D. Mo. Sept. 7, 2001) (hereinafter "slip op.").

[9]Hammer cites to Hall v. Missouri Highway & Transp. Comm'n, 235 F.3d 1065 (8th Cir. 2000), for examples of what "enmity" means in an employment context. Such behavior includes: raising one's voice at an employee, slamming doors, walking out of the room while an employee is speaking, making disparaging comments, and asking the employee to perform unnecessary work. Id. at 1068-69. Although the

standing alone, were not sufficient to create a triable issue of material fact as to whether Mayor Schneider was an interested party. Because Hammer failed to present sufficient evidence of the mayor's personal enmity towards Hammer, the district court correctly held as a matter of law that Mayor Schneider was not disqualified from breaking the tie vote of the Board under Mo. Rev. Stat. § 79.120.

## II.

Hammer also argues there were genuine issues of material fact as to whether he received notice of the reasons for his termination and whether the hearing held on February 7, 2000, was a constitutionally adequate name-clearing hearing. Hammer contends that the February 7, 2000, hearing was insufficient to clear his name because he was not allowed to call witnesses and the Board did not reconsider its decision to terminate his employment.[10]

An at-will public employee generally does not have a protected liberty interest in continued employment which would obligate a government employer to provide a hearing in connection with the employee's discharge.[11] See Speer v. City of Wynne,

---

record contains evidence of policy disputes between Hammer and Mayor Schneider, Hammer fails to show that they rose to the level of personal enmity required to disqualify the Mayor from voting.

[10]Like Mo. Rev. Stat. §79.240, Osage Beach City Ordinance § 2-123(b) provided at the time of Hammer's termination that the mayor may, with the consent of the majority of the board of aldermen, remove the city administrator from office at will. Osage Beach City Ordinance § 2-123(b), however, provided an additional provision not contained in Rev. Mo. Stat. §79.240 whereby, upon request, the mayor and the board of aldermen were required to grant the city administrator a public hearing within 30 days following notice of removal. The Ordinance is nevertheless silent regarding the form and content of the requisite hearing.

[11]To establish a due process violation, the plaintiff must show that he or she has a protected liberty or property interest. Merritt v. Reed, 120 F.3d 124, 126 (8th Cir.

276 F.3d 980, 984 (8ᵗʰ Cir. 2002) (Speer) (citing Bishop v. Wood, 426 U.S. 341, 348 (1976) (Bishop)). An exception exists, however, in cases where an employee is terminated in connection with publicized allegations of illegal or improper conduct. Id. In Board of Regents v. Roth, 408 U.S. 564, 573 (1972) (Roth), the Supreme Court held that a government employee has a liberty interest in his or her good name and reputation, which is entitled to protection when he or she is fired based on allegations of dishonesty, immorality, or illegality. To establish the deprivation of a liberty interest, a public employee must make a three-part showing: (1) that the public employer's reasons for the discharge stigmatized the employee, seriously damaging his or her reputation or by foreclosing other employment opportunities; (2) that the employer made the reasons for the discharge public; and (3) that they employee denied the charges that led to the discharge. Speer, 276 F.3d at 984 (citing Coleman v. Reed, 147 F.3d 751, 754-55 (8ᵗʰ Cir. 1998)) (additional citations omitted). Where this showing has been made, under the Constitution's procedural due process protections, the employee must be provided with adequate notice and an opportunity to dispute the charges in a "name-clearing" hearing. Id. (citing Codd v. Velger, 429 U.S. 624, 627-28 (1977) (per curiam) (Codd)) (additional citations omitted); Merritt v. Reed, 120 F.3d 124, 126 (8ᵗʰ Cir. 1997) (citing Bishop, 426 U.S. at 349).

Based on the undisputed facts, the district court found that Hammer's liberty interests were implicated by the December 15 Press Statement. The December 15 Press Statement criticized Hammer's job performance and accused him of conduct that was "improper or even worse illegal" in connection with the City's health insurance program and the award of City contracts, and would therefore create the

---

1997) (citing Shands v. City of Kennett, 993 F.2d 1337, 1347 (8ᵗʰ Cir. 1993)). The district court found that Hammer could not show that he had a property interest in his continued employment because he was an at-will employee who could be terminated at any time for any reason. Slip op. at 7 (citing Board of Regents v. Roth, 408 U.S. 564, 572 (1972) (Roth)) (additional citations omitted). Therefore, the district court properly limited its analysis to the issue of whether Hammer had a protected liberty interest.

type of stigma discussed in Roth. Slip op. at 8. In addition, Hammer presented evidence that he was confronted with the allegations during his job search and refused positions because of them, creating an issue of material fact as to whether the stigma affected his ability to find future employment. Id. at 9. The charges were publically disseminated when the December 15 Press Statement was released to the local media in Osage Beach. Id. Hammer also repeatedly denied the truth of the allegations in the December 15 Press Statement. Id. Therefore, the district court correctly held as a matter of law that Hammer was entitled to an opportunity to clear his name. Codd, 429 U.S. at 627 (once a claim of stigmatization is properly made under Roth, plaintiff must be given an opportunity to clear his or her name). See also Johnson v. Rogers, 621 F.2d 300, 306 (8th Cir. 1980) (deprivation of liberty interest found where news release issued by the county sheriff in connection with the plaintiff's termination accused her of wrongdoing, damaged her reputation, and the plaintiff denied the charges).

Hammer maintains that he received insufficient notice of the reasons for his termination and that the hearing he received was not a proper name-clearing hearing. We disagree. The December 15 Press Statement, despite the fact that it was issued nearly a month before Hammer was terminated, contained statements that were "clearly made in connection with the Plaintiff's subsequent discharge." Slip op. at 8.[12] In other words, Hammer cannot genuinely dispute the fact that he received sufficient notice of the reasons his employment was terminated. Moreover, the Board was not required to reconsider its decision to terminate Hammer in order for the hearing to pass constitutional muster. See Codd, 429 U.S. at 627 ("[T]he hearing required where a nontenured employee has been stigmatized in the course of a

_____

[12]Hammer and Mayor Schneider also attended a closed session of the Board on November 4, 1999, in which many of the same allegations contained in the December 15 Press Statement were discussed. See Minutes of the Closed Session of the Board of Aldermen of the City of Osage Beach, Missouri (Nov. 4, 1999) (Joint App. at 176-80).

decision to terminate his employment is solely 'to provide the person the opportunity to clear his name.'") (quoting <u>Roth</u>, 408 U.S. at 573 n.12). All that is required is that the aggrieved party be offered a chance to refute the charges against him or her. <u>Id.</u> The February 7, 2000, hearing fulfilled the limited purpose of clearing Hammer's name, and did not need to preserve his interest in his job. <u>Roth</u>, 408 U.S. at 573 n.12 ("Once a person has cleared his name at a hearing, the employer, of course, may remain free to deny him future employment for other reasons."). Hammer was given unrestricted time to speak at the hearing, and his attorney was also allowed to speak on his behalf. Therefore, the district court did not err when it held as a matter of law that the February 7, 2000, hearing was constitutionally adequate.

## III.

Hammer next argues that there were genuine issues of material fact in dispute as to the nature of the relationship between the parties. Hammer argues that Count III of his amended complaint is a breach of contract claim or a First Amendment retaliation claim or both.[13] The district court, however, was "confused as to exactly

---

[13]Although not directly raised, Hammer also argues that the district court should not have dismissed Count III against Mayor Schneider. Hammer maintains that because Defendants have taken the position that Mayor Schneider terminated Hammer, pleading in the alternative, Mayor Schneider would be the proper defendant under Count III. Federal district courts may "grant summary judgment *sua sponte* when the losing party is given sufficient advance notice and an adequate opportunity to submit evidence in opposition." <u>Chrysler Credit Corp. v. Cathey</u>, 977 F.2d 447, 449 (8th Cir. 1992) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986)) (additional citations omitted). Here, Hammer knew that the district court was considering the City's summary judgment motion, and had a chance to present his evidence. <u>See</u> <u>id.</u> Hammer also knew that Mayor Schneider's right to judgment turned on the same issues as the City's right to judgment. <u>See</u> <u>id.</u> Having concluded that Hammer's claims against the City were either non-meritorious, improperly plead, or barred by sovereign immunity, the district court was within its power to also enter judgment in favor of Mayor Schneider. <u>See</u> <u>id.</u>

what cause of action [Hammer] attempts to bring under Count III," slip op. at 10-11, and therefore examined Count III under both state tort and contract theories.[14]

We review the district court's interpretation of Missouri law *de novo*. Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 386 (8th Cir. 1996) (Toney) (citing Farr v. Farm Bureau Ins. Co., 61 F.3d 677, 679 (8th Cir. 1995) Farr)). The district court found that Count III properly stated a state tort claim for wrongful discharge. Under Missouri law, political subdivisions have sovereign immunity from state tort claims under Mo. Rev. Stat. § 537.600, except in three enumerated circumstances. Sovereign immunity may be waived (1) where public employees are involved in an automobile accident, or (2) where injuries are caused by the condition of public property if the land is kept in dangerous condition. Mo. Rev. Stat. § 537.600. Sovereign immunity may also be waived (3) when a political subdivision purchases liability insurance. Mo. Rev. Stat. § 537.610. Although the City purchased liability insurance, the policy expressly stated that it did not expand the City's liability beyond that which is established in Mo. Rev. Stat. §§ 537.600 and 537.610. See slip op. at 12. The district court therefore correctly held that none of these exceptions applied and properly dismissed Hammer's wrongful discharge claim. Id. See, e.g., State ex rel. Ripley County v. Garrett, 18 S.W.3d 504, 508-09 (Mo. Ct. App. 2000) (granting summary judgment where endorsement in the county's general commercial liability insurance policy expressly preserved sovereign immunity), *overruled on other grounds by* Amick v. Pattonville-Bridgeton Terrace Fire Protection Dist., No. SC 84677, 2002 WL 31863859, at *2 (Mo. Dec. 24, 2002).

We agree with the district court that Hammer failed to adequately plead a breach of contract claim under Count III. Count III did not contain either the word "breach" or "contract." Only after the City raised the defense of sovereign immunity to the state tort claim did Hammer first argue his claim was actually for breach of

---

[14]The district court dismissed Hammer's First Amendment whistleblower claim as improperly plead. Slip op. at 12.

contract. We also agree with the district court that Hammer did not have an implied contract of employment with the City. Hammer acknowledges that he did not have a written contract of employment with the City, and the district court properly concluded that, despite city ordinances requiring certain procedures before the city administrator could be terminated, Hammer remained an at-will employee. See Fidler v. Personnel Comm. for the City of Raytown, 766 S.W.2d 158, 160 (Mo. Ct. App. 1989) ("[A] public employer, particularly a municipality . . . , has no authority to limit by contract or ordinance the power granted the public body [under Mo. Rev. Stat. §79.240] to hire and discharge at will its appointed officers.") (citing Russell v. City of Raytown, 544 S.W.2d 48 (Mo. Ct. App. 1976)). The City could therefore terminate Hammer "without reason or for no reason at all." Id. See also Armer v. City of Salem, 861 F.2d 514, 516 (8th Cir. 1988) (holding police officers were at-will employees under Mo. Rev. Stat. § 79.240 and thus were removable "for any reason or no reason.").

IV.

Regarding his state law defamation claim, Hammer next argues that there were genuine issues of material fact in dispute as to whether criticisms of his job performance contained in the December 15 Press Statement were non-actionable opinions protected by the First Amendment. See Press Statement, Jim Schneider, Mayor, City of Osage Beach, Missouri (Dec. 15, 1999) (Joint App. at 31-32). Hammer also argues that the district court erred in granting summary judgment in favor of Schneider on the defamation claim because only the City filed a motion for summary judgment.

We again review the district court's interpretation of Missouri law *de novo*. Toney, 85 F.3d at 386 (citing Farr, 61 F.3d at 679). Under Missouri law, there is a two-part test for reviewing allegedly defamatory statements to determine whether a plaintiff can survive summary judgment: (1) whether the statement is capable of having a defamatory meaning and, if so, (2) whether one or more privileges shields

-14-

the defendant from legal action. Ribaudo, 982 S.W.2d at 704 (citations omitted); Pape v. Reither, 918 S.W.2d 376, 380 (Mo. Ct. App. 1996) (Pape) (citations omitted). Statements of opinion, even if made maliciously or insincerely, are afforded absolute privilege under the free speech clause of the First Amendment and cannot be actionable libel. Pape, 918 S.W.2d at 380 (citing Diez v Pearson, 834 S.W.2d 250, 253 (Mo. Ct. App. 1992) (Diez)). Whether a purportedly defamatory statement is a protected opinion or an actionable assertion of fact is a question of law for the court. Pape, 918 S.W.2d at 379 (citations omitted); Diez, 834 S.W.2d at 252 (citations omitted). The test for determining whether a statement is an opinion is "'whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact.'" Ribaudo, 982 S.W.2d at 705 (quoting Nazeri v. Missouri Valley College, 860 S.W.2d 303, 314 (Mo. 1993)). The court must examine "the totality of the circumstances to determine whether the ordinary reader would have interpreted the statement as an opinion." Diez, 834 S.W.2d at 252 (citing Henry v. Halliburton, 690 S.W.2d 775, 788 (Mo. 1985) (Henry)). The privilege does not apply, however, where the statement of opinion implies the existence of undisclosed defamatory facts.[15] Ribaudo, 982 S.W.2d at 704 (citing Pape, 918 S.W.2d at 380).

The district court found that the statements made by Mayor Schneider appeared capable of having a defamatory meaning, but held that the statements were non-actionable privileged opinions expressed by the mayor as part of an ongoing political

---

[15]Allegations of specific criminal conduct are considered statements of fact. Diez v. Pearson, 834 S.W.2d 250, 252 (Mo. Ct. App. 1992) (citing Henry v. Halliburton, 690 S.W.2d 775, 790 (Mo. 1985) (Henry)). A statement merely referring to criminal conduct, however, must be examined in context to determine "whether the reader would be left with the impression that the plaintiff was being accused of a crime or that the defendant disagreed with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval." Id. (citing Henry, 690 S.W.2d at 788-89).

dispute.[16] Slip op. at 13-14. Examining the circumstances surrounding the issuance of the December 15 Press Statement, the district court noted that numerous comments had been circulating regarding the present state of the City's government and the conduct of City officials. Id. at 13. It was in response to these concerns, and to defend his own actions, that Mayor Schneider issued the press statement commenting on the actions of Hammer and two aldermen. Id. As noted by the district court, statements regarding political issues are generally afforded greater protection than other types of speech. Id. at 13 (citing New York Times v. Sullivan, 376 U.S. 254 (1964)). See also Ribaudo, 982 S.W.2d at 705 ("[T]he fact that the [allegedly libelous] statements were made in the course of a political campaign is entitled to great weight in determining whether there is actionable libel."). The district court found that Mayor Schneider supported the allegations in his statement by referring to specific facts, noting that "even falsely or insincerely held opinions regarding criminal conduct are privileged, so long as the facts supporting the opinions are included." Slip op. at 13-14 (citing Diez, 834 S.W.2d at 253). The December 15 Press Statement referred to the fact that the City's budget information was only stored on a single computer with no back up, that an alderman was illegally on the City's insurance policy, that Hammer applied for loans on behalf of the City without first consulting Mayor Schneider or the Board, and that Hammer acted outside his authority to award contract bids in cases where there was only one bidder or to a party with the second lowest bid. Slip op. at 13-14. Therefore, the district court held that allegations contained in the December 15 Press Statement were privileged opinions and not actionable. Id. Although Hammer maintains that the Press Statement did not contain facts which would allow a reader to decide independently whether Hammer's alleged conduct was illegal, we agree with the district court and hold that as a matter of law Mayor Schneider's comments in the December 15 Press Statement were privileged opinions protected by the First Amendment. See Pape, 918 S.W.2d at 381

---

[16]The district court also held that Hammer's defamation claim could be dismissed because the City had not waived sovereign immunity. Slip op. at 14. Hammer does not dispute this issue on appeal.

(dismissing libel action for allegedly defamatory statements accusing plaintiff of fraud, noting that "allegations of fraudulent or illegal conduct are conclusions about the consequences that should attach to certain conduct, and as such they too are [privileged] opinions").

We also hold that the district court correctly granted summary judgment in favor of Mayor Schneider on the defamation claim, even though the City's motion was the only summary judgment motion filed.  A judgment entered by the court on a libel claim may dispose of all counts against all parties if the resolution of one issue in favor of one defendant necessarily resolves the same claims against the other parties.  See Ribaudo, 982 S.W.2d at 703 (upholding the dismissal of a libel claim against all parties where only one party requested summary judgment and the statement was found to be privileged).  Because Hammer's defamation claims against both the City and Mayor Schneider were based on the December 15 Press Statement, and the district court found that the statements at issue were not actionable as a matter or law, it was proper for the district court to grant summary judgment in favor of Mayor Schneider as well as the City.

V.

Finally, Hammer argues that the district court erred in denying his second motion to amend his complaint to raise new claims of retaliation for whistleblowing activities, in violation of state law, the First Amendment, and 42 U.S.C. § 1983.  Hammer argues that the district court should have granted his second motion for leave to amend his complaint in response to the City's newly pleaded defense of sovereign immunity and that the district court erred in denying leave to amend without explanation.

We review the district court's decision to grant or deny leave to amend for abuse of discretion.  Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) (Bell) (citing Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th

Cir. 1993)) (additional citations omitted).  Leave to amend under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  There is, however, no absolute right to amend a pleading.  Becker v. Univ. of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999) (citing Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (Williams)).  Leave should be denied where there are compelling reasons "such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  Id. at 907-08 (quoting Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992)).

Reviewing the record, we find that the district court did not abuse its discretion in denying Hammer's second motion for leave to amend his complaint.  Hammer did not plead, or even mention, the First Amendment in his original complaint or his amended complaint; nor were his First Amendment claims reasonably related to the pleaded allegations such that Defendants would have been placed on notice that Hammer was pursuing such a claim.  See Bell, 160 F.3d at 454 ("[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved.") (citing Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 448 (8th Cir. 1995)).  Morever, Hammer filed his second motion to amend nearly fifteen months after the filing of his original complaint.  The district court had already granted leave to amend once, and the second motion for leave to amend was filed after discovery had closed and the City had moved for summary judgment on the pleaded theories.  Therefore, the district court had adequate reasons to deny Hammer's motion.  See id. (upholding district court's denial of a motion to amend where the issues raised by the proposed amendment involved different legal and factual issues from those in the original complaint); Williams, 21 F.3d at 224-25 (holding no abuse of discretion in denying motion to amend where plaintiff filed motion to amend fourteen months after filing of original complaint and six days after the discovery period ended).

CONCLUSION

Accordingly, the judgment of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.