# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-4008
_____

| | |
|---|---|
| Infinity Products, Inc., | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Premier Plastics, LLC; Prodesign, Inc., | * |
| | * |
| Appellees. | * |

_____

Nos. 02-1136 & 02-2971
_____

| | | |
|---|---|---|
| Infinity Products, Inc., | * | Appeals from the United States District Court for the District of Minnesota. |
| | * | |
| Appellee, | * | [UNPUBLISHED] |
| | * | |
| v. | * | |
| | * | |
| Premier Plastics, LLC, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Prodesign, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 16, 2003
Filed:  March 15, 2004

_____

Before SMITH and HANSEN, Circuit Judges, and READE, District Judge[1].

_____

HANSEN, Circuit Judge.

This appeal involves a contract dispute arising out of the Joint Sales Agreement (JSA) between Appellant Infinity Products, Inc. (Infinity) and Appellee Premier Plastics, LLC (Premier).   After Appellee Prodesign, Inc. (Prodesign) acquired Premier, Infinity filed a breach of contract action against both Premier and Prodesign based upon alleged oral modifications to the JSA.  Following a jury verdict in favor of Infinity, the district court granted Premier and Prodesign's motion for judgment as a matter of law, concluding that the statute of frauds barred enforcement of the alleged oral modifications.  We affirm in part and reverse in part.

## I.  BACKGROUND

Infinity assembles and markets molded plastic parts for use in automobile interiors.  Premier and Prodesign manufacture these parts.  In November 1998, Infinity and Premier entered into the JSA which created a three-year joint venture whereby Premier agreed to manufacture parts solely for Infinity, with only three agreed upon exceptions, and Infinity agreed to market only Premier's parts.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

The JSA provided a pricing formula under which Infinity could purchase the plastic parts for approximately twenty-five percent over Premier's cost of production. The JSA also provided that the agreement would terminate upon a bill of sale or breach of the agreement by either party. Because production of the plastic parts required specialized tools, or molds, the JSA provided that any jointly-owned tools could not be transferred without the consent of both parties and were to be maintained by Premier.

It is undisputed that after signing the JSA, Infinity purchased parts from other suppliers. Infinity argues that it was forced to make these purchases because Premier initially was incapable of manufacturing the quantity and quality of parts that Infinity's customers required. Infinity alleges that Premier was not only aware of these purchases, but agreed to them. In order to assist Premier in updating its tools to make parts suitable for Infinity's needs, Infinity sent one of its own engineers to Premier's plant to re-engineer the tools.

In January 1999, Coachmen Industries, Inc., the parent company of Appellee Prodesign, purchased the assets of Premier via a bill of sale. From that point on, the names of Premier and Prodesign were used interchangeably, but Premier was effectively merged into Prodesign.[2] The former president of Premier, Richard Grise, became the vice president of the Prodesign division of Coachmen and continued to serve as Infinity's contact person at Prodesign. Over the next eleven months, Prodesign continued to sell parts to Infinity under the pricing terms of the JSA.

In February 1999, Infinity learned that Prodesign was using the tools that had been updated by its engineer to manufacture parts for Prodesign's other customers.

_____

[2]Although Infinity alleges that Prodesign continued to use the Premier name after the bill of sale, the remainder of this opinion will refer to Premier for all pre-bill of sale conduct and to Prodesign for all post-bill of sale conduct.

Infinity objected to Prodesign's use of the tools, asserting that the terms of the JSA and the labor expended by its engineer gave Infinity an ownership interest in the tools. When approached by Infinity, Prodesign responded by mailing an invoice for the cost of the tools. Infinity paid the invoice ($30,775) and notified Prodesign that it was not to use the tools to manufacture parts for other customers. Prodesign responded with a letter assuring Infinity that Prodesign had not and would not use Infinity's tools to make products for other customers. Despite this assurance and ongoing complaints from Infinity, Prodesign continued to sell parts to other customers, some allegedly manufactured with Infinity's tools. In August 1999, Prodesign did send Infinity an invoice credit of $5,237.50 as a royalty for parts made from Infinity's tools. Nevertheless, the business relationship continued to deteriorate, and in November 1999, Infinity retrieved the tools from Prodesign's plant and began manufacturing its own plastic parts.

Infinity sued Premier and Prodesign, alleging breach of contract and other causes of action not relevant to this appeal. Specifically, Infinity claimed that Premier and Prodesign breached the JSA by (1) selling parts to customers other than Infinity; (2) charging Infinity more for the parts than the JSA specified; (3) overcharging Infinity for the price of the jointly-owned tools; (4) using the jointly-owned tools to manufacture parts for other customers; and (5) selling the jointly-owned tools in the asset sale without Infinity's permission. Premier and Prodesign filed a motion for summary judgment, arguing that Infinity breached the contract first by purchasing parts from other manufacturers, thus resulting in an automatic termination of the JSA, or alternatively that the JSA automatically terminated upon Premier's sale to Coachmen and any implied modifications were unenforceable under the statute of frauds. The district court denied the motion and allowed the parties to proceed to trial. At the close of evidence, Premier and Prodesign filed a motion for judgment as a matter of law (JAML). The district court did not rule on this motion until after receiving the jury's verdict.

4

The jury returned a verdict finding that a contract existed between Infinity and Prodesign, that Prodesign breached that contract, and that Prodesign was liable for damages arising from Infinity's lost profits ($134,000), Prodesign's sales to other customers ($80,566), Infinity's overpayment for the tools ($15,337), and Prodesign's sale of parts made from the tools ($36,313). The jury also found that Premier did not breach the JSA and was not liable to Infinity for any damages. Prodesign renewed its earlier motion for JAML and, in the alternative, moved for a new trial.

The district court granted the motion for JAML, concluding that the statute of frauds barred enforcement of any agreement between Infinity and Prodesign or any oral modifications to the JSA. Infinity appeals, arguing that Premier and Prodesign waived the automatic termination provision, that the writings in evidence satisfy the statute of frauds, or alternatively, that the evidence supports an exception to the statute of frauds. Infinity also argues that the district court erred in allowing Prodesign to amend its answer to include a statute of frauds affirmative defense. Prodesign cross-appeals from the district court's denial of its conditional motion for a new trial.

## II. DISCUSSION

We review de novo the district court's grant of JAML. Mouser v. Caterpillar, Inc., 336 F.3d 656, 662 (8th Cir. 2003). In reviewing a grant of JAML after a jury verdict, we must construe the facts in the light most favorable to the verdict. See Ollie v. Titan Tire Corp., 336 F.3d 680, 685 (8th Cir. 2003). JAML is proper only if the evidence is legally insufficient to support the verdict. See Fed. R. Civ. P. 50(a); Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000), cert. denied, 532 U.S. 1008 (2001).

The JSA provides, and the parties agree, that Indiana law applies to this case. Indiana has adopted much of the Uniform Commercial Code ("U.C.C.") relating to

the sale of goods, including the provision that "[t]he requirements of the statute of frauds . . . must be satisfied if the contract as modified is within its provisions." Ind. Code § 26-1-2-209(3). The statute of frauds provides that "a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." Ind. Code § 26-1-2-201(1).

## A. Premier

The district court determined that Infinity's initial breach of the exclusivity provision resulted in an automatic termination of the JSA pursuant to the specific terms of that agreement. Infinity argued that Premier and Infinity had agreed to an oral modification of the JSA prior to Infinity's breach, and, alternatively, that Premier's subsequent conduct constituted a waiver of the automatic termination provision. The district court concluded that any prior oral modification of the JSA regarding Infinity's ability to purchase parts from other suppliers was unenforceable because it did not satisfy the statute of frauds. Alternatively, the district court concluded that Premier did not have the intent or ability to waive the automatic termination provision.

We need not address the waiver or statute of frauds issues as they relate to Premier. Both the jury and the district court have concluded that Premier is not liable for any breach of the JSA. Therefore, the only relevant inquiry for this court is whether the JSA remained in effect after the bill of sale to bind Prodesign. Because we conclude that it did not, we need not resolve whether the JSA survived Infinity's initial breach.

**B. Prodesign**

The jury found that a contract existed between Infinity and Prodesign and that Prodesign breached that contract by making sales outside the JSA. Nevertheless, the district court concluded that any agreement between Infinity and Prodesign was unenforceable because there was no evidence satisfying the statute of frauds that Prodesign agreed to substitute itself for Premier under the JSA. We agree with the district court.

The JSA specifically provided for automatic termination of the agreement upon a bill of sale. Thus, by its express terms, the JSA terminated on January 5, 1999, when Premier executed a bill of sale transferring all of its assets to Coachmen. Even assuming, as we must in deference to the jury's findings, that Prodesign intended to assume the JSA or otherwise to be bound by its specific terms, that agreement between Infinity and Prodesign is not enforceable because it does not satisfy the statute of frauds.

First, Infinity relies upon a series of memos, invoices, and checks pertaining to the sale and use of tools to prove that Prodesign assumed the JSA. While these writings may be relevant to prove a separate agreement as to the tools, discussed infra, they in no way prove that Prodesign entered into an exclusivity agreement with Infinity to supply parts at a specific discounted price. Second, Infinity presents documents to show that there was ongoing confusion as to the identity of Premier and Prodesign after the bill of sale, but Infinity fails to demonstrate how this confusion otherwise satisfies the requirement that Prodesign's agreement with Infinity be reduced to a signed writing. Finally, Infinity argues that the price calculations used by Prodesign after the bill of sale were identical to those contained in the JSA, and therefore serve as evidence that Prodesign intended to continue operating under the terms of the JSA. As the district court noted, these purchase orders prove nothing more than the price of individual sales transactions. They contain nothing to

document Prodesign's alleged promise to offer this pricing for all future transactions or to refrain from selling parts to other customers.

Although a writing need not contain every term of the contract to satisfy the statute of frauds, the writing must "afford a basis for believing that the offered oral evidence rests on a real transaction." U.C.C. § 2-201 Comment. Merely proving that Infinity and Prodesign engaged in individual sales transactions after the bill of sale does not afford a basis for believing that Prodesign promised to substitute itself for Premier and to be bound by the terms of the JSA. To allow Infinity to use this type of parol evidence for the purpose of establishing material elements of the alleged contract presents the exact danger the statute of frauds was designed to prevent. Furthermore, we agree with the district court that the exceptions to the statute of frauds argued for by Infinity – waiver by attempted modification, payment made and accepted, and judicial admissions – simply do not apply to the facts of this case.

## C. Tools

The district court concluded that the memos, invoices, and checks related to the tools did not prove the existence of an exclusivity contract between Infinity and Prodesign sufficient to satisfy the statute of frauds. Furthermore, it would be futile to rely on this evidence to prove an oral modification of a contract that we have deemed unenforceable. Nevertheless, by awarding Infinity damages for Prodesign's sale of parts manufactured with Infinity's tools, the jury clearly found that Infinity and Prodesign came to an agreement on this subject. Because we find that the writings presented by Infinity would satisfy the statute of frauds as to this separate agreement, we reverse the district court's judgment and reinstate the jury award as to this item of damages.

The jury's award for parts sold off Infinity's tools was based on Prodesign's promise not to use tools owned by Infinity to produce parts for Prodesign's other

customers. In response to Infinity's assertion that it owned certain tools possessed by Prodesign and Infinity's demands that Prodesign discontinue its use of those tools for the benefit of other customers, Prodesign sent Infinity an invoice for the price of the tools. (Appellant's App. at 171-72.) Infinity paid the invoice by writing a check to Premier, which check was cashed by Prodesign. (Id. at 227.) Prodesign later sent a signed memo to Infinity stating that "we have not used your tools and will not use them to make products for other customers." (Id. at 221.) Apparently Prodesign did not abide by this promise because three months later Infinity received an invoice credit for "Royalty – Parts Made Their Tool." (Id. at 70.) Taken together, these documents establish that the agreement found by the jury is enforceable against Prodesign, not as a modification of the JSA, but as a separate, binding contract.

The jury also awarded an amount for overpayment for tools. This amount was based on the theory that Infinity had an ownership interest in the tools prior to paying the full amount of the invoice. Infinity argues that Prodesign orally agreed to put Infinity's name on the tools after Infinity's engineer spent time fixing the tools. Although the jury's award suggests that such an agreement took place, we agree with the district court that the agreement is unenforceable because an oral promise does not satisfy the statute of frauds and nothing in the JSA gave Infinity an ownership interest in the tools before the bill of sale. Accordingly, we affirm the district court's judgment on this item of damages.

### D. Statute of Frauds Amendment to Prodesign's Answer

Infinity also argues that the district court abused its discretion by allowing Prodesign to amend its answer to include a statute of frauds defense after discovery had ended and simultaneously with Prodesign's motion for summary judgment. We review the district court's decision to allow a party to amend its answer for an abuse of discretion. Hammer v. City of Osage Beach, MO, 318 F.3d 832, 844 (8th Cir. 2003). Infinity alleges that it was prejudiced by its inability to conduct further

9

discovery after such a defense was raised. However, the evidence that Infinity states it would have discovered relates only to the issues of whether Infinity and Prodesign engaged in over 140 sales transactions and whether Infinity paid for all of the goods in those transactions. We have already determined that facts involving individual sales transactions are irrelevant to establishing whether Prodesign assumed the JSA and agreed to all of the terms therein. Infinity was not unduly prejudiced by the amendment. See id. (listing the justifications for denying a motion to amend pleadings). Therefore, we find no abuse of discretion by the district court in allowing Prodesign to amend its answer.

### E. Cross-Appeal

The district court denied Prodesign's conditional motion for a new trial. Prodesign appeals this decision, arguing that the testimony of Infinity's expert witness on damages should have been excluded and that the jury's verdict as to start-up costs and lost profits is internally inconsistent. Although Prodesign argues that Kenneth Ritterspach was not qualified as an expert and that his damage calculations were flawed, nothing in Prodesign's brief challenges Ritterspach's calculations related to the amount of damages for parts made from Infinity's tools. Because this is the only surviving portion of damages, we do not address Ritterspach's testimony as to the other measures of damages. Similarly, because we affirm the district court's judgment vacating the jury's award for lost profits, we will not address Prodesign's separate challenge to the jury's calculation of that award.

## III. CONCLUSION

The jury award included damages for lost profits, parts sold off Infinity's tools, overpayment for tools, and sales outside the JSA. The damages for lost profits and for sales outside the JSA were both based on the theory that an exclusivity agreement existed between Infinity and Prodesign and that Prodesign breached that agreement.

Because we agree with the district court that the statute of frauds prevents Infinity from enforcing any agreement it claims it had with Prodesign as to price or exclusivity, we hold that Infinity may not recover these damages, and we affirm the district court's judgment as to those claims. Similarly, the damages for overpayment for tools were based on the theory that Infinity had an ownership interest in the tools prior to submitting its payment to Prodesign. Nothing in the terms of the JSA gives Infinity this interest, and the termination of the JSA upon the bill of sale made it impossible for Prodesign to agree to such a modification via an oral promise. Therefore, we also affirm the district court's judgment as to the overpayment for tools.

Finally, the jury awarded damages for parts sold off Infinity's tools. These damages were based on a theory that Prodesign agreed to a modification of the JSA whereby it would not use the tools purchased by Infinity to manufacture parts for other customers. This theory necessarily fails because, as we have held, the JSA terminated upon the bill of sale. Nevertheless, we believe that Infinity has presented sufficient evidence, consistent with the jury's findings, to prove the existence of a separate agreement by Prodesign not to use Infinity's tools for other customers. We find that the documentation provided by Infinity would be sufficient to enforce that agreement, and we reverse the district court's judgment on that item of damages and reinstate the jury's award of $36,313.

_____

11