**David PAPE, Plaintiff/Appellant,**

**v.**

**Christopher REITHER,
Defendant/Respondent.**

No. 68742.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 26, 1996.

---

**5.** Husband's trial counsel did state that they were not conceding that the results of the blood test were correct.

Richard B. Dempsey, Richard B. Dempsey, Jr., Washington, for Appellant.

Hinshaw & Culbertson, Bruce J. Weingart, Brent W. Baldwin, St. Louis, for Respondent.

PUDLOWSKI, Judge.

David Pape (appellant) brought this defamation action against Christopher Reither (respondent), and the trial court dismissed the case for failure to state a claim. This case provides a worthy occasion for an exposition of the labyrinthine law of defamation. The judgment of the trial court is affirmed in part and reversed in part.

### Factual and Procedural History

In the Spring of 1987, appellant worked as an architect for Rooney Properties, a construction firm which (along with various other companies and individuals) had been hired by respondent to design and build a new residence. The construction deal grew acrimonious, and finally degenerated into a lawsuit. Respondent's lawsuit named Rooney Properties (with Onyx Corporation and Helicopters, Inc. listed as its general partners), R.J. Rooney, Charlene Rooney, Cigi Gallery, Inc., Schultz Group, Inc., Donald Schultz, West County Surveying and Engineering, Inc. and William Steinkoetter as defendants; appellant was neither named as a defendant nor mentioned anywhere in respondent's petition. Respondent's petition featured five counts alleging various misconduct by sundry assortments of defendants: count one alleged fraud and misrepresentation (in misrepresenting the suitability for construction of the land on which the house was built) against Rooney Properties, Onyx Corporation, Helicopters, Inc., Robert Rooney and Charlene Rooney; count two sought to pierce the corporate veils of the companies mentioned in count one; count three alleged breach of contract (relating to charges for some carpeting) by Cigi Gallery, Inc.; count four sought to pierce the corporate veil of Onyx Corporation and, thereby, impute liability for its acts to Cigi Gallery, Inc.; and count five alleged that Donald Schultz, Schultz Group, Inc., West County Surveying and Engineering, Inc., and William Steinkoetter were negligent in performing various engineering and architectural aspects of the construction.

The parties to this lawsuit entered into a settlement agreement which, although apparently submitted to the trial court, was never consummated by performance of the terms thereto. It was this nonperformance (on the part of the settling defendants) which prompted respondent to fire off the angry missives which are the basis of the instant defamation action. The first letter, entitled "For Settlement Purposes Only," was addressed to Robert Rooney, Terry Steinkoetter, Ed Weman, Donald Schultz, and Steve Lieber. In that letter, respondent states "It is my position that you participated in fraudulent and or (sic) illegal acts...." Enclosed with this "Settlement" letter was a second letter, which was addressed to the Missouri Board for Architects, Professional Engineers, and Land Surveyors (the Board).

The "Board" letter begins with an expression of respondent's desire to file a formal complaint against appellant, Weman, Steinkoetter, and Schultz. Respondent then

claims to have "overwhelming written evidence which shows several gentlemen participated in a scheme of conduct that defrauded [him]." In the letter's piece de resistance, respondent announces:

> I am prepared to provide you with the following written information for your review:
>
> 1. David Pape held himself out to the public as an architect when in fact he was not an architect as defined.[1]
>
> 2. David Pape forged/counterfeited the professional seal of Donald Schultz and submitted architectural plans to the City of Ladue for the construction of a home in which none of the architectural work was done by Donald Schultz.

The "Settlement" letter was sent only to the named addressees, while the "Board" letter was sent to both the Board and the recipients of the "Settlement" letter.

On July 11, 1994, after receipt of this correspondence, appellant filed a two count petition alleging that the above-described passages from respondent's letters defamed him. Respondent promptly filed a motion to dismiss for failure to state a claim and a memorandum in support thereof, urging that the statements complained of in appellant's petition were privileged as statements of opinion, as statements made in an on-going judicial proceeding, and as statements made to an administrative agency pursuant to the exercise of right conferred by state law. The

trial court sustained respondent's motion without explaining its reasoning in doing so, and this appeal followed.[2]

### Standard of Review

An understanding of our standard of review, as well as the standards the trial court should have employed as an initial matter, is critical to reaching the correct resolution of this case. Review of a judgment on the pleadings is a purely legal exercise wherein we treat all facts alleged in the dismissed petition as true. *Matyska v. Stewart*, 801 S.W.2d 697, 699 (Mo.App.E.D.1991). Moreover, whether language is defamatory and actionable is a question of law. *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493, 496 (Mo.App.E.D.1980). It is well established that in evaluating an allegedly defamatory statement, a court should determine whether the statement is capable of having a defamatory meaning; if so, the question of whether it was actually understood as defamatory is submitted to the jury. *Henry v. Halliburton*, 690 S.W.2d 775, 779 (Mo. banc 1985); *Hagler v. Democrat–News, Inc.*, 699 S.W.2d 96, 98 (Mo.App.E.D.1985); *Anton* at 497. Likewise, the decision-making paradigm applicable to the question of whether a statement is one of fact or opinion requires the court to first determine whether the statement is capable of being understood as a factual assertion, and if it is, the question of whether it was actually understood as such is one for the jury. *Henry* at 788[3];

---

1. The "as defined" modifier is apparently meaningless, as the letter offers no definition of the term, nor incorporates any by reference.

2. As respondent pointed out to the trial court in a separate motion to dismiss, made pursuant to Rule 67.03, appellant filed his memorandum in opposition to respondent's (original) motion to dismiss out of time, without leave of the court. The trial court had entered an order establishing deadlines for the filing of memoranda by the parties, and respondent asserted that because appellant did not meet his deadline, dismissal was appropriate. The trial court did not expressly rule on this motion.

Respondent now attempts to renew this argument before this court. However, respondent does not raise it as a separate Point Relied On in his Appellate Brief. In any event, the trial court's order to which respondent refers did not require appellant to file a memorandum, but only established a deadline for when one could be

filed, if it was filed at all. Rule 67.03 contemplates dismissal of an action where a party has failed to take action mandated by the court; here, the court did not mandate any action, but merely set a time limit for when an action entirely in the discretion of the parties could be taken. Respondent could, therefore, have filed a motion to strike appellant's memorandum, but a motion to dismiss on this basis was inappropriate.

3. Unfortunately, *Henry* is a bit incongruous on this point. It unequivocally states at page 788 that "It is up to the trial judge in the first instance to determine whether the alleged statements are capable of being treated as assertions of fact, although the jury may decide that they were not so understood." However, that case also announces at page 786 that "If the alleged defamatory remarks can be characterized as 'opinions,' they should be subject to the First Amendment absolute privilege." We cannot account for the inconsistency, as the contexts in

*Schnelting v. Coors Distributing Co. of Missouri,* 729 S.W.2d 212, 217 (Mo.App.E.D. 1987); *Diez v. Pearson,* 834 S.W.2d 250, 252 (Mo.App.E.D.1992); *Anton* at 499. While at first blush these rules may appear redundant and collapsible into a single inquiry, a recognition of why they are not is crucial to understanding this case and the law of defamation generally.

■ The defamation analysis is comprised of two components, each of which has a number of sub-parts. First, there is the question of whether the statement is defamatory at all; to be defamatory, a statement must be clear as to the person addressed, *see Diez* at 253, and must cast aspersions on that person's reputation so as "to lower him in the estimation of the community or to deter third persons from associating with him." *Henry* at 779 (quoting Restatement 2nd of Torts, § 559). Once a statement is found to be defamatory as defined, the court inquires as to whether one or more privileges (e.g., the privilege applicable to statements of opinion, the privilege for statements made in a judicial proceeding, et cetera) shelters the defaming party from legal action.

This delineation of defamation doctrine helps to illuminate the rules a court should employ in reviewing a defamation claim. The rule that a jury question is presented if a statement is capable of being understood as defamatory is analytically prior to the rule that a jury question is presented if words are capable of being understood as an assertion of fact, because the latter rule concerns the "opinion privilege," which does not arise as an issue until the statement is found to be defamatory. With this framework in mind, we now turn to an examination of the statements at issue in this case.

### *"Settlement" Letter*

■■ The only statement in the "Settlement" letter which appellant asserts is defamatory reads, "It is my position that you participated in fraudulent and or (sic) illegal acts. . . ." Given that the letter is addressed to appellant (among others), there can be no question that the word "you" in this sentence refers to a group of people which includes appellant. Thus, there is no vagueness or imprecision as to the subject of the sentence. Furthermore, statements which falsely impute conduct incompatible with one's business, trade or profession are defamatory per se. *Matyska v. Stewart,* 801 S.W.2d 697, 700 (Mo.App.E.D.1991). In assessing whether this requirement is met, we must read the statements in their full context, *Matyska* at 700; doing so here, it is clear that the allegation of "fraudulent and or illegal acts" pertains to a professional context. Fraudulent or illegal conduct committed in one's professional endeavors is, of course, incompatible with those endeavors, so that this statement is defamatory per se (assuming, as we must, that appellant can demonstrate its falsity.)

■ We next inquire whether some privilege applies to this statement which prevents it from being actionable. Statements of opinion are protected by an absolute privilege which is rooted in the First Amendment to the United States Constitution; that is, even if they are made maliciously or insincerely, they do not give rise to a cause of action. *Diez* at 253. The only exception to this rule which is recognized in Missouri is that the privilege does not apply when the statement of opinion necessarily implies the existence of undisclosed defamatory facts, *Henry* at 787; this caveat is not relevant here. Respondent argues that the phrase "it is my position" clearly requires the conclusion that this statement is one of opinion, and we agree. The rule of construction articulated above requires that we allow a jury to decide how the statement was understood if it can be reasonably interpreted as a statement of fact. The phrase "it is my position" cannot be contorted to mean anything other than "it is my belief" or "I will attempt to prove"—glosses that likewise reflect the expression of an opinion. Put plainly, it is impossible to interpret this statement as positing a verifiable proposition, and verifiability is the crux of the fact/opinion distinction in defamation law. *Anton* at page 498; *Diez* at 252–53

which these statements are found do nothing to reconcile the anomaly. We simply note that only

the former pronouncement accords with precedent.

■ Furthermore, allegations of fraudulent or illegal conduct are conclusions about the consequences that should attach to certain conduct, and as such they too are opinions. The fact that it might be eventually established in court that the persons accused in these statements indeed engaged in fraudulent or illegal conduct does not make the statements verifiable; it simply means that the prediction issued in the statements proved accurate. For example, the statement "The Cardinals will win the championship this year" may or may not prove true, but the speaker cannot know, at the time he makes the statement, whether it will happen. Thus, a statement must be verifiable **at the time it is issued** in order to be one of fact.

The defamatory statement in the "Settlement" letter is also privileged as a statement made in an on-going judicial proceeding, and because the briefs submitted by the parties reveal considerable confusion concerning the nature of this privilege, we find it necessary to explicate this analysis as well.

■ The "judicial privilege" precludes recovery for defamatory statements made by judges, lawyers, witnesses or parties in the course of a judicial proceeding if the defamatory statements are relevant to the proceeding. *Wright v. Truman Road Enterprises,* 443 S.W.2d 13, 15 (Mo.App.W.D.1969). The rationale undergirding this privilege is that the truth-seeking function at the heart of judicial proceedings requires absolute candor and a free exchange of views, and that these values outweigh the interest of a defamed party in vindicating his good name. *Id.; Laun v. Union Electric Co.,* 350 Mo. 572, 166 S.W.2d 1065, 1069 (1943). Although neither the parties' efforts nor our independent research uncovered any Missouri authority for the proposition that settlement negotiations qualify as judicial proceedings for purposes of the judicial privilege in defamation law, we believe that the considerations militating in favor of the privilege are applicable to the settlement context as well. Appellant argues that respondent's defamatory statement should not enjoy the sanctuary afforded under the judicial privilege just because respondent labelled the correspondence in which they are contained a "settlement document."

Appellant's point is well-taken, but it is clear to this court (even apart from the letter's heading, which certainly is relevant) that the central concern of the letter, viewed in its entirety, is obtaining performance of the settlement agreement. The "Settlement" letter is properly classified as a settlement document, and accordingly is protected by the judicial privilege.

The parties expend great effort arguing over whether appellant was a party to respondent's lawsuit, tacitly agreeing that this is a precondition to invocation of the judicial privilege. No authority is cited to substantiate this assumption, and in fact, no such requirement exists. As discussed above, the rationale for the judicial privilege is that the parties bearing an essential relation to judicial proceedings must be free to speak their minds; this freedom is not circumscribed by a requirement that they speak frankly only about other parties to the lawsuit. Nor does the fact that appellant is not a party to respondent's lawsuit prevent the defamatory statement in the "Settlement" letter from being relevant to that lawsuit. Although the statement is vague as to the nature of the fraudulent acts complained of, it is reasonable to assume, based on the full context of the letter, that it addresses at least some of the same underlying subject matter as respondent's lawsuit. "Relevance" in this context merely means "connected with," *Wright* at 15; no concepts of evidentiary admissibility are implicated.

■ Our real concern with regard to operation of the judicial privilege in this case (a concern ignored by the parties) is that here, there is no indication in the record that the letter containing the defamatory statement was ever submitted to, or communicated before, the court. Although this fact puts the case somewhat at odds with the rationale for the privilege and, therefore, gives us pause, there is authority in Missouri that a qualified or conditional version of the judicial privilege attaches in this circumstance nonetheless. *See Roberson v. Beeman,* 790 S.W.2d 948, 951 (Mo.App.W.D.1990) ("qualified" judicial privilege held to attach even though allegedly defamatory statements were made before suit was actually filed, and thus not made to

or before the court.) We hold that the defamatory statement in the "Settlement" letter falls within the judicial privilege.

### *"Board" letter*

The effect of the statements contained in the letter addressed to the Board (and also sent to the recipients of the "Settlement" letter) requires an equally careful analysis. The statements in this letter fall into two categories: statements which are not defamatory at all, and defamatory statements which are not protected by any privilege. We examine each category in turn.

■ Respondent's claim that he has "overwhelming written evidence which shows several gentlemen participated in a scheme that defrauded me" is not defamatory at all, because it is insufficiently precise in its description of the alleged defrauders. This is so even though appellant is referred to (and in fact specifically accused of misconduct) elsewhere in the letter, because there is nothing in the letter requiring the inference that appellant is one of the "several gentlemen" who participated in the scheme alleged in this sentence. It is well established that for a statement to be defamatory, there can be no confusion as to the identity of the party defamed. *Diez* at 253; *Henry* at 789.

■ However, respondent's statements that he is prepared to provide written information to the effect that "David Pape held himself out to the public as an architect when in fact he was not an architect as defined" and that "David Pape forged/counterfeited the professional seal of Donald Schultz and submitted architectural plans ... in which none of the architectural work was done by Donald Schultz" are clearly defamatory. Obviously, the statements are quite precise in accusing appellant. Furthermore, both statements accuse appellant of misconduct in his professional activities, and as such they are defamatory per se. *Brown v. Kitterman,* 443 S.W.2d 146, 154 (Mo.1969); *Matyska* at 700.

■ It is equally clear that these statements assert facts rather than opinions. The statements present an account of historical occurrences alleged to have taken place; they are not predictive or conclusory, but posit verifiable propositions. Furthermore, the totality of the circumstances surrounding the statement and its publication bolster the conclusion that these statements are factual.[4] The "totality of the circumstances" test essentially asks whether an apparently-factual statement was made on an occasion in which vituperation and hyperbole are so expected as to render a facially-factual statement an opinion. *Henry* at 787–88. Because this test is very similar to an inquiry into how a statement was actually understood (which, as mentioned above, is a jury question), an apparently factual statement will only be deemed opinion under the "totality" test when such a finding is clearly required. In the present case, where the defamatory statements were made to a governmental body with investigative authority, the totality of the circumstances indicates an occasion of gravity and extreme earnestness; there is nothing here which requires a contextual finding of "opinion."

■ The real analytical puzzle posed by these statements is whether they fall within a "qualified privilege."[5] The qualified privilege doctrine, first established in the case of *Lee v. W.E. Fuetterer Battery & Supplies Co.,* 323 Mo. 1204, 23 S.W.2d 45, 60–63 (1929) and codified for a modern audience in *Henry,* protects defamatory statements which are made "on an occasion which furnishes a prima facie legal excuse for the making of [them]," with the qualification that they must not be malicious. *Lee* at page 60; *Henry* at 780–81. Respondent cites 4 C.S.R. 30–

---

4. In *Henry,* "verifiability" is listed as one of several factors to be considered in deciding the fact/opinion issue, and the factors are lumped together in what is called a "totality of the circumstances" test. *Henry* at 788. Since *Henry,* "verifiability" has broken loose from the pack to emerge as the guiding consideration in this analysis, and our opinion reflects and approves this

development. However, the other factors in the "totality of the circumstances" test still retain some vitality.

5. The "legal excuse" qualified privilege is not to be confused with the "fair comment" strand of the qualified privilege doctrine, which is applicable to media defendants. *See Henry* at 780–781.

12.010, the Public Complaint Handling and Disposition Procedure section of the regulations governing the Board, as authority providing a legal excuse for the defamatory statements made in the "Board" letter. There is no question that this regulatory provision does outline a procedure for making formal complaints about architects, professional engineers and land surveyors, and that it, therefore, provides a "legal excuse" for the making of defamatory statements in such complaints, as envisaged in the *Lee* qualified privilege doctrine.

The difficulty lies in the fact that respondent did not limit publication of his defamatory complaint to the Board, but also forwarded it to the recipients of the "Settlement" letter. Because the qualified privilege is a rather amorphous doctrine which has been invoked very rarely, its contours are far from clear. Therefore, in defining the scope of this privilege in a given case, recourse must be made to the terms under which it arises.

The text of 4 C.S.R. 30–12.010 reveals a clear intent that complaints to the Board are to be confidential. Paragraph four specifies that a complaint "shall be a closed record," available for inspection only by certain political officials, and even then access is conditioned on various safeguards (e.g., that access relates to an official function). Paragraph six commands that "both the complaint and any [information obtained as a result thereof] shall be considered a closed record of the Board and shall not be available for inspection by the public." In light of these statements, we hold that the qualified privilege created by this regulation protects only those defamatory statements contained in the complaint submitted to the Board; accordingly, publication of the same defamatory statements to additional persons is actionable.

Respondent contends that, somehow, the defamatory statements in the "Board" letter are not actionable because the only persons in addition to the Board who received the letter are parties to respondent's lawsuit. This argument conflates the qualified privilege analysis with the judicial privilege. The "Board" letter clearly was not part of the Settlement negotiation, as it does not even mention respondent's lawsuit. Accordingly, publication of the "Board" letter to the "Settlement" letter recipients does not fall within the qualified privilege, and is actionable.

The judgment of the trial court dismissing appellant's claim is affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings, consistent with this opinion.

AHRENS, P.J., and SIMON, J., concur.